OFFICE SPECIALTY MANUF'G CO. v. GLOBE CO.

(Circuit Court, S. D. Ohio, W. D. January 21, 1895.)

No. 4,607.

1. PATENTS—WHAT CONSTITUTES INVENTION.
There is no invention in connecting two old devices to operate simultaneously, when the operation and function of each in their connected relation is the same as that performed by each when used singly.

2. SAME—COMBINATION CLAIMS—LIMITATION AND INFRINGEMENT.
A combination claim containing separate elements must be limited to those precise elements or their mechanical equivalents, each for each; and it is not infringed by a different combination, of different elements, or a combination consisting of a less number of elements.

3. SAME—DISCLAIMER—UNREASONABLE DELAY.
A delay of over four years in filing a disclaimer of a claim which has been adjudged invalid by a judgment from which no appeal is taken is an "unreasonable delay," within the meaning of Rev. St. § 4922, and operates to invalidate the whole patent.

4. SAME—FILE BINDERS.
The Shannon patent, No. 217,907, for an improvement in temporary file binders, is invalid, for want of invention, as to all the claims, and also because of unreasonable delay in filing a disclaimer after one claim of the claims had been adjudged invalid.

This was a bill by the Office Specialty Manufacturing Company against the Globe Company for infringement of a patent.

Church & Church, for complainant.
O. W. Hill and Parkinson & Parkinson, contra.

SAGE, District Judge. The patent for the infringement of which this suit is brought was issued to James S. Shannon on the 29th of July, 1879 (No. 217,907), for an improvement in that class of temporary binders which have fixed receiving wires and transfer or vibrating wires. The improvement consists—First, in giving movement to the transfer wires on a vertical axis, for the purpose of swinging their free ends towards or from the free ends of the fixed wires; secondly, in means provided and arranged whereby the transfer wires are held stationary, either in contact with or removed from the fixed wires; and, thirdly, in connecting the two swinging wires of a double file, so that in rotating one the other is also rotated. The vertical wires are secured preferably to a metal plate or base, which is intended also as a connection for the several working parts of the device with a board or tablet. Each transfer wire has a vertical and a curved or arched portion, arranged in the plate at the same distance apart as the fixed wires, and also so as to engage with the fixed wires when closed. These wires pass through the plate, and are supported at the foot by brackets, in which, and in the plate, they freely, but closely, turn. The free ends of the vertical fixed wires are beveled on one side, as shown in the specification, to give puncturing points. Preferably the fixed wires are beveled from the outside upwardly and inwardly, and the ends of the transfer wires are beveled or sharpened so as to meet the beveled faces of the fixed

wires, and form a directly continuous ring. They are both vibrated or rotated outwardly. A crank arm is fixed to the lower end of each vibrating wire between the plate and the brackets. A connecting arm joins the extremities of the crank arms for the purpose of giving to the vibrating wires simultaneous movement when either of them is rotated. A spiral spring is fixed at one end of the plate, and attached at the other end to the connecting bar, for the purpose

of holding the vibrating wires either in contact with the fixed wires or away from them, as may be required to have the rings closed or open. To this end one of the arms and the spring are so relatively arranged in connection with the arch of the vibrating wires as to be held by the spring at each extremity of its throw. A slot limits the throw of the crank arm and of the vibrating wires, so that the latter may not bear forcibly at their points against the fixed wires.

Their throw in the opposite direction is arrested by the connecting bar, which strikes one of the fixed wires. It is suggested in the specification that other means may be provided for this purpose. By varying the relative arrangement of the crank arms, the arched portions of the vibrating or transfer wires may be made to rotate in opposite directions or in the same direction; that is, either both inwardly, both outwardly, or both to either side. The preferable movement is both outwardly, in which case the crank arms are arranged on opposite sides of the vibrating or transfer wire, and the spring is connected as near as may be to one of the crank arms. If the vibrating arms be bent to form a crank, as is shown in one of the figures, the spring may directly connect thereto, or other forms of spring may obviously, it is stated in the specification, be otherwise employed. The mode of forming the crank arm, as shown in Fig. 5 of the drawings of the letters patent, is especially adapted to single files; that is, to files having only one fixed and one transfer wire. That figure also shows the plate or base bent over at its margin to form the bracket to support the foot of the vibrating wire. The inventor states in the specification that, when the plate is cut from sheet metal, projections for this purpose may be formed at the corners of the plate no longer than is required to form the central hanging loop and eye, which is designated in the drawings by the letter H.

It is further stated in the specification that it is not material to the invention claimed whether the fixed wire is solid or tubular. If solid, it may be perforated near its point, as shown in Fig. 4, for the purpose of stringing the contents of the file. It is not material that the fixed wires be attached to the metal plate, instead of to the tablet at the rear of the plate; but the inventor says it is obviously better to secure them to the plate, in order to permit separate packing of the tablets and working parts for shipment, and to facilitate putting the parts together in proper relation. The beveled faces of the fixed wires should be arranged to meet the transfer or vibrating wires, whichever way the latter may swing, so as to make as smooth and perfect a joint as possible, in order that papers may be transferred from one wire to the other without injury.

There are four claims. The first is for the combination with the fixed wire and the base of the arched vibrating wire having a positive rotary movement in the axis of its vertical portion, whereby its free end may be swung into contact with or away from the free end of the fixed wire, substantially as described. This claim was held invalid by Judge Blodgett in a decision rendered November 5, 1887, in Schlicht v. Letter File Co., 36 Fed. 590. The owners of the patent acquiesced in this decision, but did not file a disclaimer until February, 1893.

The claims of the patent in issue are as follows:

(2) "In combination with the vibrating wire, C, and the fixed wire, B, the spring, G, and the crank, D, or D', formed or fixed in the vibrating wire, C, whereby the ring composed of the latter and the fixed wire, B, may be held either open or closed, substantially as described."

(3) "The combination in a double file or binder of the fixed wires, B, B, the vibrating wires C, C, crank arms, D and D', connecting bar, F, and

spring, G, whereby the free ends of the wires, C, C, may be simultaneously swung horizontally to open and close the rings, substantially as described."

(4) "The fixed wires, B, B, and vibrating wires, C, C, combined with operative spring, G, connecting bar, F, and cranks, D, D', set in opposite directions, so that the said vibrating wires move in opposite directions as they open or close."

Letters patent No. 198,968, issued to William C. Bussey, January 8, 1878, show a single bill file, consisting of a fixed vertical wire secured in a base, and a second vertical wire mounted in the same base, having its upper end bent to form an arch which registers with the upper end of the fixed wire, the bent wire being so mounted that it may be turned upon its own axis so as to swing its bent end laterally into or out of engagement with the fixed wire.

Patent No. 165,614, to Charles E. Ramus (July 13, 1875), for improvement in paper clips, shows a fixed wire, a bent wire mounted on the same base, and arranged to register with the fixed wire, also arranged to turn on its own axis laterally into and out of engagement with the fixed wire. This device shows, in addition to the elements found in the Bussey patent, a spring consisting of the bent end or portion of the transfer wire, so formed and arranged that in its normal condition that wire is out of engagement with the fixed wire, and is twisted in its vertical portion when its bent end is made to register with the fixed wire, and is also bent in its vertical portion or sprung out of line, so as to hold the bent end forcibly downward in engagement with the fixed wire. These devices contain all the elements found in either of the pair of file wires in the complainant's device, excepting the arm or crank attached to the lower end of the vibratory bent wire, and the spring arranged to engage with said arm so as to hold the bent wire into or out of position with the fixed wire. But in Ashley's patent, No. 69,385 (October 1, 1867), for improvement of letter files, there is shown the base, a fixed filing wire secured therein, a bent wire having a foot piece forming cranks projecting in opposite directions, one of the cranks so pivoted to the base that the bent wire might be swung laterally, being turned substantially on its own axis, and thereby brought into or out of engagement with the fixed wire, and the other arm or crank controlled by a spring so arranged as to hold the bent wire in engagement with the filing wire.

In Foster's patent, No. 202,013 (April 2, 1878), for an improvement in temporary binders, there are two fixed vertical filing wires, the two arms so arranged as to engage the upper ends of the fixed wires and hold the papers thereon, the arms being pivoted to a standard secured to the base, and being arranged to swing in a vertical plane into or out of engagement with the fixed wires, and controlled by a reacting spiral spring, which holds them in their position.

Patent No. 202,755 (April 23, 1878), to Louis Prahar, for improvement in clasps for pocketbooks, shows a fixed post secured to the base, and an arm pivotally connected to the base, provided with a crank, and arranged to swing in a vertical plane into or out of engagement with the upper end of the fixed post, and controlled by a spring which engaged its crank so as to hold the arm open or closed.

In patent No. 134,724 (January 14, 1873), to George W. Billow, for improvement in paper files, there is shown a pair of filing arms, each provided with a crank, and so pivoted as to swing in a vertical plane on the base, and a spring which so engages the crank arm as to hold the filing wires open or closed when swung upon their axis.

In Schlicht v. Letter File Co., cited above, Judge Blodgett found that the disclaimer then filed by the complainant, limiting the first claim of the patent, admitted that the Bussey patent, cited above, anticipated the combination of a single vibrating wire with a fixed vertical wire, and added that the attempt of the complainant by his disclaimer to obviate the effect of that patent, by limiting his claim to a tablet or letter file containing at least a pair of wires, was ineffectual, because that was nothing more than a mere duplication of parts, which did not call for the exercise of inventive talent. He said: "There is no more invention in fastening papers to a letter file by two points of attachment instead of one than there would be in fastening a board to a piece of studding or beam by two nails instead of one." In that opinion this court entirely concurs. Is there, then, invention in the device exhibited, connecting the wires for simultaneous operation? The complainant's expert testified upon cross-examination that the principal difference between the operation of the single file and that of the double file consisted in operating the vibrating wires of the latter simultaneously by means of connecting mechanism, and that, considered as an abstract principle, he did not regard the connecting of two old devices to operate simultaneously as invention, when the operation and function of each in their connected relation was the same as that performed by each when used single. The expert was right in the view thus expressed.

The only remaining feature is the use of the spring to hold the wires in open and closed position. The use of a spring to hold any device in an open or closed position was common and well known long prior to complainant's patent. Equivalents for like use were shown in the patent to Boeklen, No. 187,494 (February 20, 1877), for improvement in temporary binders. It is true that the precise construction or device shown in complainant's device does not appear in any of the prior devices in evidence, but it required no invention to apply to duplicate wires the spring which had been applied to single wires. Moreover, the application to duplicate wires is shown in the Underwood patent. But it is contended that there is both novelty and invention in the specific combination of the old devices recited in the claims. This brings us to the lowest plane of the patent law, where, if the distinction between mechanical skill and invention is not altogether ignored, and novelty and utility made the only test, the line between skill and invention is so shadowy and uncertain, and so little regarded, that in very many cases, if not a majority of them, the patent is wholly invalid. I do not see how the specific combination in this case can be recognized as patentable. But if the patent, restricted to the precise arrangement described and shown, could be sustained, the defendant would not be within the restriction, and therefore does not infringe. Its files are manu-

factured under letters patent No. 438,574, issued October 14, 1890. In external appearance they do not differ in any material respect from the files manufactured by complainant. The general construction is similar. The files are double, with fixed and vibrating wires, the latter arched, pivoted, and rotated into or out of engagement with the fixed wires, which have their ends beveled in the same manner as in the complainant's device. On the lower ends of the transfer or rotating wires are cranks projecting in opposite directions, having intermeshing gear teeth for causing the simultaneous movement of the rotating wires inwardly towards the fixed wires, and outwardly away from them. A spring is connected to the crank beneath the base plate, and pressing towards its center of rotation; so that, when the crank is moving across the center of motion, the spring is under the greatest tension, but, when on either side, it serves to hold the crank and wires in proper position, whether open or closed. It is claimed that this spring is the equivalent of the complainant's spring, as a leaf spring is the equivalent of a coil spring if it performs the same function in the same way.

Attention is called to the statement in the specification of the Dom patent that, instead of the S-shaped spring (which is the shape employed by the defendant), any suitable form of spring or springs may be employed for accomplishing the desired result; and it is altogether true that the meshing gear teeth take the place of the connecting bar in the complainant's device. The patentee of that device might have drawn his claim to cover "connecting mechanism," or "means for connecting," or "a connection between" the filing wires, whereby they might be operated simultaneously; but, as pointed out by counsel for the defendant, had he done this the state of the art and the authorities would have limited his claim to the precise construction shown and described. He elected to draw his claim for combinations calling for certain specified elements, and, independently of the state of the art, he must be held limited to combinations containing those precise elements or mechanical equivalents, each for each, which would relieve defendant from the charge of infringement. The connecting bar is entirely absent from defendant's device. Defendant employs a different spring, applied in a different way, attains his result by a different combination of different elements, and employs one less element than the combinations called for by the claims. The defendant, therefore, does not infringe.

Lastly, it appears from the record that the first claim was held invalid in the case of Schlicht v. Letter File Co., already referred to, on the 5th of November, 1887. Complainant's title is derived through Schlicht & Field. This decision was acquiesced in. It has not been appealed from. No disclaimer under and in accordance with it was filed until February, 1893,—four years and three months later,—and no reason is shown for the delay.

Now, under section 4922, Rev. St. U. S., the right of a patentee, who has inadvertently claimed more than he is entitled to, to maintain suit for any distinguishable part of the patented invention, which was bona fide his own, is preserved, provided that "no paten-

tee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer." Counsel for the complainant cite Sessions v. Romadka, 145 U. S. 29, 41, 12 Sup. Ct. 799. In that case, upon the hearing in the court below, it was claimed that the patent was invalid by reason of the joinder in it of distinct inventions. The court below, says Justice Brown, in announcing the opinion of the supreme court, was evidently inclined to that opinion, but permitted the plaintiff to enter a disclaimer of all claims but the one in suit; and that disclaimer was, so far as appears from the report of the case, thereupon promptly made.

In O'Reilly v. Morse, 15 How. 62, 121, it was held that the delay in entering a disclaimer was not unreasonable, for, said Chief Justice Taney, speaking for the court, "the objectionable claim was sanctioned by the head of the office. It has been held to be valid by a circuit court, and differences of opinion in relation to it are found to exist among the justices of this court. Under such circumstances, the patentee had a right to insist upon it, and not disclaim it until the highest court to which it could be carried had pronounced its judgment." This case was followed in Seymour v. McCormick, 19 How. 105, 106.

In Singer v. Walmsley, 1 Fish. Pat. Cas. 558, Fed. Cas. No. 12,900, the court, remarking that what is unreasonable delay is a question to be settled by the court, added that unless the party knew that the claim was false, if he believed that he was the sole inventor of what he claimed, the court would find that the time, in reference to the question of delay, commenced when the knowledge was brought home to him that he was not the first inventor, or when it was declared by a court of competent jurisdiction that he was not the first inventor; that then the time would begin to run, and not until then. In the case at bar the decision that the first claim was invalid was made in November, 1887. That decision has all the force and effect, so far as the question under consideration is involved, of a decision by the highest court of the land, because it was accepted and became final by the fact that no appeal was taken from it. But until February, 1893, three months before this suit was commenced, the complainant continued, by its failure to disclaim, to hold out to the public the claim which had been adjudged invalid, as a valid claim. Knowingly to persevere in an invalid claim after the discovery that it is invalid is a fraud, which forfeits all right to the protection of any part of the invention covered by the patent. Rob. Pat. § 642. If, as held in Miller v. Brass Co., 104 U. S. 350, an unexplained delay of two years before making application for a reissue under a statute which makes no provision with regard to delay was unreasonable, it would seem that a delay of more than four years before entering a disclaimer, after the patentee became aware that he had claimed more than he had invented or described, there being an express statutory provision against unreasonable delay, is clearly unreasonable; and this court therefore holds that the complainant's patent is void, because of unreasonable delay in entering his disclaimer. The bill will be dismissed, at the costs of the complainant.